# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWAYNE THOMPSON,<br><br>               Plaintiff,<br>      v.<br>MARIO NAWAZ et al.,<br><br>               Defendants. | Case No. 2:20-cv-10448-SVW (SK)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

## I.
## INTRODUCTION

Plaintiff Dewayne Thompson is a California state prisoner suing three doctors under 42 U.S.C. § 1983 for allegedly denying him adequate medical care to treat an ankle injury he first sustained while jogging in prison. Because the allegations in his second amended complaint, together with the medical records incorporated into the complaint by reference, show only Plaintiff's disagreements with his doctors' treatment plans, he has failed to state a plausible Eighth Amendment claim for deliberate medical indifference. Thus, the Court recommends that Defendants' motions to dismiss the second amended complaint (ECF 60; ECF 66) be granted with no further leave to amend. *See* 28 U.S.C. § 636; G.O. 05-07.

## II.

## BACKGROUND[1]

In April 2019, Plaintiff injured his ankle during a jog at California State Prison. (ECF 59 at 6). He was examined by Dr. Mario Nawaz, who gave him pain medication and referred him to physical therapy. (ECF 64 at 27-28). When Plaintiff sprained the same ankle a month later, Dr. Nawaz ordered an X-ray, which revealed no fractures. (*Id*. at 24, 26). The doctor ordered a Toradol injection for pain relief and gave Plaintiff an ace wrap along with pain medication. (*Id*. at 26). When Plaintiff continued to complain of ankle pain in June 2019, Dr. Nawaz provided Plaintiff an ankle brace, prescribed pain medication, and referred him again to physical therapy. (*Id*. at 24). The physical therapist recommended that Plaintiff wear shoes with cushioned or orthotic insoles for arch support and ankle alignment. (ECF 64-1 at 6).

Following that recommendation, Plaintiff asked Dr. Nawaz for compression socks and orthotic shoes, but he also wanted a cortisone injection. (ECF 59 at 7; ECF 64 at 22). Dr. Nawaz declined to administer the injection and found that Plaintiff did not qualify for compression socks or orthotics "per policy." (*Id*.). The doctor recommended instead that

---

[1] The material facts in this section are based on the well-pled allegations in the operative complaint taken as true and liberally construed with permissible inferences in Plaintiff's favor. But because the complaint refers to and relies on prison medical records that Plaintiff filed (ECF 34; ECF 59 at 6-8 & n.2; ECF 64; ECF 64-1)—the authenticity of which Defendants do not question (ECF 60; ECF 66)—the material facts here also include those from the undisputed medical records necessarily incorporated into the complaint. (ECF 64; ECF 64-1). *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (documents referred to and relied on in complaint may be considered on motion to dismiss without converting it into summary judgment motion). The court need not credit conclusory allegations in the complaint that are contradicted by the objective medical records. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff continue to use his ankle brace and ace wrap. (ECF 64 at 22). He did, however, offer another Toradol injection that Plaintiff declined. (*Id.*). Dr. Nawaz also ordered an MRI, which revealed a torn anterior talofibular ligament (ATFL). (ECF 64 at 16, 22-23). As a result, the doctor referred Plaintiff to an outside orthopedic specialist. (*Id.* at 21).

That specialist, Dr. Justin Sherfey, met with Plaintiff in October 2019. (*Id.* at 30). Plaintiff described his pain to Dr. Sherfey as level 3 on a 10-point scale. (*Id.*). Still, Dr. Sherfey took new X-rays and reviewed Plaintiff's MRI results. (*Id.* at 30, 32-33). The X-rays showed no fractures, and Dr. Sherfey concluded that the MRI results did not justify surgery at that time. (ECF 63 at 4; ECF 64 at 32-33). The doctor recommended that Plaintiff continue with physical therapy, use an ankle brace, and obtain follow-up as needed. (ECF 64 at 33). He told Plaintiff that recovering from an ankle sprain could take months, so he should not be alarmed by continued aches and swelling. (*Id.*). Afterward, Dr. Nawaz reviewed Dr. Sherfey's recommendations and maintained Plaintiff on a plan of physical therapy and use of an ankle brace. (*Id.* at 3, 20).

Dissatisfied with that plan and his apparent lack of progress, Plaintiff filed a grievance in February 2020, complaining about severe ankle pain and the ineffectiveness of physical therapy. (*Id.* at 6). He also insisted that he needed surgery. (*Id.*). A third physician, Dr. Bernard Ramos, reviewed Plaintiff's grievance and determined that no intervention was needed. (*Id.*). The chief grievance appeals officer then affirmed Dr. Ramos' decision. (*Id.* at 3). He found that Plaintiff had "received ongoing monitoring and treatment related to [his] uncontrolled right ankle pain, as determined to be medically necessary," which included "primary care provider evaluations, nursing assessments, orthopedic specialist consultations,

physical therapy, an ankle brace, and medication." (*Id*.).

A few months later, Plaintiff saw a prison nurse still complaining about chronic ankle pain, so she scheduled an orthopedic follow-up visit with Dr. Sherfey. (*Id*. at 17). While waiting for that appointment, Plaintiff was offered an assistive walking device but refused it believing that its use would classify him as a disabled inmate and limit his housing and exercise options. (ECF 59 at 7; ECF 69 at 2). When Plaintiff saw Dr. Sherfey, he received a cortisone injection and was referred to a podiatrist. (ECF 64-1 at 1, 3-4). And sometime later, Dr. Sherfey agreed to perform artificial ankle surgery and offered regular cortisone injections. (ECF 59 at 9). But Plaintiff declined both treatments, claiming that frequent cortisone injections could cause osteoporosis and that an artificial ankle would hinder his mobility. (*Id*.).

## III.
## DISCUSSION

The Eighth Amendment prohibits prison officials from intentionally denying or delaying medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). But it does not prescribe treatment methods or police medical malpractice. *See id*. at 105-06. Thus, to state an Eighth Amendment claim for inadequate prison medical care, Plaintiff must allege facts plausibly suggesting that the Defendants were "deliberately indifferent" to his "serious medical needs." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). "This includes both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Id*. (cleaned up).

Defendants do not dispute whether Plaintiff has alleged enough facts to show he had a serious medical need with his ankle, which if untreated

"could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). So the only issue is whether Plaintiff has alleged enough facts plausibly suggesting that the Defendants consciously disregarded an excessive risk of further injury to Plaintiff's ankle with their treatment decisions. *See Colwell*, 763 F.3d at 1066. But a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019). "In cases involving choices between alternative courses of treatment, [P]laintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to [P]laintiff's health." *Gordon v. County of Orange*, 6 F.4th 961, 970 (9th Cir. 2021) (cleaned up). Here, the second amended complaint and the medical records incorporated by reference fail to plausibly allege that Defendants made either medically unacceptable treatment decisions or that they did so in conscious disregard of serious risks to Plaintiff's health.

*First,* Plaintiff alleges that Dr. Nawaz should have administered a cortisone injection when he asked for one and given him orthotic shoes as suggested by his physical therapist. (ECF 59 at 6-8). Even if Plaintiff is right, though, he alleges no nonconclusory facts suggesting that the doctor's more conservative treatment choices were medically unacceptable. Nor does Plaintiff allege any nonconclusory allegations plausibly suggesting that Dr. Nawaz was making conservative treatment choices with subjective deliberate indifference. *See Nicholson v. Finander*, 2014 WL 8095187, at *9 (C.D. Cal. Oct. 24, 2014) ("prison official does not exhibit deliberate

indifference to a serious medical need simply because she prescribes a course of treatment that proves ineffective"); *Medrano v. Ortega*, 2019 WL 5650805, at * 4 (S.D. Cal. Oct. 31, 2019) (physician does not consciously disregard excessive risk to prisoner's health by prescribing "alternative, albeit allegedly less effective, medication"); *Saenz v. Branch*, 2017 WL 6343485, at *6 (N.D. Cal. Dec. 12, 2017) (prescribing medication rather than providing therapeutic shoes "cannot be said to have amounted to more than medical negligence").  Merely characterizing the doctor's treatment decisions as "callous" is not enough.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gordon*, 6 F.4th at 970.  If anything, the medical records confirm that Plaintiff's allegations against Dr. Nawaz just involve a garden-variety "dispute over the type of medical treatment to be provided to an inmate that is insufficient to state a civil rights cause of action." *Guerra v. Williams*, 2018 WL 5806439, at *4 (C.D. Cal. Aug. 24, 2018) (emphasis omitted).

    *Second*, Plaintiff alleges that Dr. Sherfey, the orthopedic specialist that Dr. Nawaz referred him to, should have given him a cortisone injection the first time he asked for one and recommended reconstructive surgery sooner for a torn ATFL.  (ECF 59 at 8-9).  As with Dr. Nawaz's decisions, Plaintiff alleges no nonconclusory facts suggesting that Dr. Sherfey's similarly conservative decisions were either medically unacceptable or made in conscious disregard of Plaintiff's health.[2]  To assert, as Plaintiff does here, that "a reasonable practitioner and patient . . . would know that

---

[2] To the contrary, Plaintiff's medical records show that he reported a pain level of only 3 out of 10 when he claims he should have received a cortisone shot on demand.  (ECF 64 at 30).  And Plaintiff's reference to an online medical article suggesting that reconstructive surgery for a torn ATFL may be a "reliable method of repair" is self-defeating, for that same article recognizes that "there is a lack of a formalized, or standardized evaluation and treatment" for ATFL tears.  (ECF 64-2 at 12).

[a] cortisone injection could benefit Plaintiff's serious ankle injury" says nothing about Dr. Sherfey's subjective state of mind. (ECF 59 at 9). And even if Plaintiff arguably "suffered a permanent injury" because of a delayed decision to perform reconstructive surgery, he has alleged—at most—"poor medical care, negligence, or even malpractice," which cannot "give rise to a constitutional claim that a physician was deliberately indifferent to [his] condition." *Guerra*, 2018 WL 5806439, at *5.

*Third*, Plaintiff alleges that Dr. Ramos "callously" denied his healthcare grievance when he declined to override the treatment choices of Drs. Nawaz and Sherfey. (ECF 59 at 6-7; ECF 63 at 2). But an "allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983." *Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015). And nothing in Dr. Ramos' grievance decision—which another reviewing doctor upheld on administrative appeal—plausibly suggests that he or the treating doctors were deliberately indifferent to Plaintiff's medical needs. To the contrary, Plaintiff's own pleadings and incorporated records show that show when Dr. Ramos reviewed his grievance, there was a plan of care in place for Plaintiff's injury that had included X-rays, MRIs, medication, ankle wraps and braces, orthopedic specialist consultations, and physical therapy. That Dr. Ramos did not second-guess the treatment decisions of Plaintiff's primary care provider and orthopedic specialist cannot plausibly suggest deliberate medical indifference.

## IV.
## CONCLUSION

For all these reasons, the Court recommends that (1) Defendants' motions to dismiss the Second Amended Complaint be granted; (2) that

leave to amend the operative complaint a third time be denied as futile, *see Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002); and (3) that judgment be entered dismissing this action with prejudice.[3]

DATED: August 10, 2022

_____
STEVE KIM
U.S. MAGISTRATE JUDGE

---

[3] Because of this recommendation, Defendant Sherfey's request to dismiss the complaint for lack of proper service on him (ECF 66 at 8-10) may be denied as moot.